Thank you, Your Honors. Good morning. Matthew Bassett, appearing on behalf of the Appellant in this matter. This particular case has several issues regarding the IDEA. And in my brief time, let me go over those issues first. First, regarding a tuition reimbursement to a private placement for the 2007-2008 school year, the court found out, the law found that it was time barred by the 180-day statute of limitations under HRS 302A-443 Sub A Sub 2, which calls for a reduction in the standard two-year statute of limitations for brain actions under the IDEA when a parent unilaterally removes a child from a public placement into a private placement setting. The court below found that that occurred in this situation. Another issue was whether the DOE, the Department of Education, can call an IEP and declare a unilateral placement, changing the placement which was conferred by a settlement agreement. And an issue regarding, say, put whether a settlement agreement counsel one year's tuition with the expectation that there would be cooperation between the parties in order to designate a suitable public school for placement after. The settlement agreement did contemplate that there would be cooperation between the parties to look at a subsequent public placement, if appropriate. But then we have a factual finding, do we not, from the administrative law judge, which apparently was focused on by the district court, that your client didn't cooperate by skipping the meetings after multiple notices. That, yes, Your Honor, that is factually not correct. That was a factual finding, so are you arguing clear error in that fact? We'd be arguing a clear error on that, yes. And on what do you rely to show that clear error? Under a question of fact would be clear error, yes. No, I understand that, but I'm just following up on Judge Tallman's point. You ought to show that there was clear error on the part of the ALJ, and I'm asking you on what do you rely on the record to show clear error? The petitioner did, in fact, go to the proffered school, the offered school, to see whether or not an appropriate offer of placement was made. During those, the petitioner tried to make the arrangement for the observation in February of 2008, that we're not allowed to come on to campus until April of 2008. At the time in 2008, in looking whether or not the offered or the purported offer of placement would be appropriate, the principal, Mrs. Chung of Pearl Harbor High, told both the advocate from Hawaii Disability Rights Center and the parent that they had not made a placement decision, that there was no placement available or prepared at that school, that there was a work in progress. So the parent had properly declined that particular offer of placement. The parent was not opposed to a public school offer of placement, just not at Pearl Harbor High. But counsel, that's not the question I ask you, and that's not the question that Judge Smith is pursuing with you. I'm looking, maybe this will help focus our question, I'm looking at excerpt of record page 49, which is page 14, of the state hearing officer's findings of fact and conclusions of law, and the third paragraph of that page says, basically concludes that the mother willfully failed to appear for the July 25, 2007 IEP meeting by choice. And apparently she decided to take her son to the mainland instead of responding. That's a factual finding, and a legal conclusion that she was not cooperating. And then again, looking at excerpt of record page 53, which is page 18 of the hearing officer's decision, he finds that she chose not to attend the July 25, 2008 IEP meeting, claiming that she had a new job. And I believe elsewhere in his findings, he said that she was inconsistent even in her own testimony in offering her explanation. Don't you have to show that those factual findings are clearly erroneous before we can disregard them? No. Because the school failed procedurally to follow the IDEA, and failing to offer an IEP in the realm of Rowley, you do not have to go to the substantive elements of that. You're talking about a very high level of abstraction here. I mean, I understand your point, but back to Judge Hallman's issue and mine here, you've got a specific factual finding by the ALGA. I think you said, you agreed, that in order to refute that, you have to show there's clear error. And we're saying where exactly in the record have you asserted facts that could be reasonably found to show clear error on these two issues of your client's participation or lack thereof. In my client's testimony, my client informed the school that she did not refuse to attend. And that was discounted by the ALGA. She did not refuse to attend a meeting. But that was not believed in light of all of the records, all of the letters. I forget how many there were altogether, but there were many in each year. And the ALGA discounted that. So you've got a difference of view. What evidence do you cite us to to show clear error on the part of the ALGA on these factual findings? A clear error on whether or not the parent did not cooperate in the IEP. Correct. In other words, we're in a court of appeal, not a trial court. We have to look at the record here. The ALGA has made certain factual findings to which Judge Tallman has made reference. He asked you, as did I, what the standard is that you have to meet, what level of proof do you have to bring forward to permit us as a court of appeal to in effect refute these factual findings, which otherwise are binding upon it. You agreed it's clear error. So I'm saying where are those facts in the record to which you wish us to recur to determine whether or not there was clear error on the part of the ALGA in making these factual findings about your client's level of participation or lack thereof? Well, parental participation under the case holding in women's school versus. . . But again, you're going to a level of abstraction. I'm looking for points in the record, evidence that you produced that we can use. Well, the findings, the fact that the hearing was made was that the parent was unavailable for that IEP meeting because of work obligations. She did not refuse to participate in that meeting. That's not what the ALGA. He found that essentially that she willfully failed to appear despite numerous notices and that her failure to cooperate resulted in his legal conclusion that when the Department of Education sent her the IEP proposal in July of 2007, which she acknowledged receipt of, that that became the IEP by virtue of her failure to participate. That was the hearing officer's ruling. But again, the findings of fact are wrong, but you haven't demonstrated to us how they're wrong. You're just saying they disagree with them. You're not telling me where the evidence is that I can look at in the record to satisfy myself that the hearing officer was completely off base in rendering the factual findings. Well, the petitioner testified that she had work obligations rather than to go to the meeting. She only had nine days' notice. And this is a parent who is a mother of an autistic child who lives below the poverty level, has a car that's not functioning, and she had work obligations. The school was under obligation to tell her that she could attend this IEP meeting telephonically. They didn't do that. They did not make any effort for her to participate in that meeting other than giving her a ticket or a leave of bait. That is clear error. And her testimony, again, she said that she did not refuse to attend, so saying that she deliberately did that is absolutely incorrect. She had noted the inconsistency in the explanation that she offered, which the administrative law judge cites at page ER 49, page 14 of the record, where she offers two conflicting explanations for why she failed to attend the July 25, 2007, IEP meeting. Yeah, she was at first, and again, this is part of what the, you know, painting the mommy as the bad mommy, the bad parent. No, no, we're not trying to paint the mother at all. We're trying to understand why a finder of fact who hears two different explanations from a witness as the reason why she didn't appear at the meeting should not be found incredible. She testified honestly. She corrected. I took her out of the hall. We clarified exactly what time frame occurred there. We came back to the hearing, and she testified honestly about why she wasn't able to attend that. So then she testified dishonestly before you took her out to the woodshed to explain the problem with her testimony? Well. I mean, how is it error for the finder of fact to conclude these words if this witness is not telling you the truth? Again, Your Honor, this one small element of the case was actually withdrawn. The important element of the case was the hearing officer finding that the DOE can unilaterally declare private placement at an IEP meeting. There's no court in the country that would find that an IEP team can convene and declare unilateral placement. But she did it again in 2008. I'm looking at Excerpt of Record 53 where she failed to appear for the July 25, 2008, IEP meeting. How can I conclude that the trier of fact is wrong when he says she's not cooperating? Well, that's a red herring, Your Honor. It doesn't matter that she appeared or not appeared. Is it a red herring if the hearing officer also found that she failed to give permission so that DOE people could come to the private school and observe the child as they needed to do in order to fashion an appropriate plan? Well, those are incorrect. That finding of fact is also incorrect? That is incorrect. The parent did not prevent that from happening. What happened is in the record, in his record, shows that she gave consent for that. She gave royal consent. The DOE failed to provide consent forms for her which are necessary for that. Again, under the case in Union School, it was not the parent's obligation to provide documents to the DOE. It's the DOE's obligation to work your own documentation and to blame the parent. Counsel, counsel, help me with this. I'm looking at excerpt of record 47, page 12 of the hearing officer's finding book. On July 25, 2008, another IEP was created, although no assessments of the student were done in 2008. It is noted that for the months prior to this IEP, the DOE had been writing letters requesting progress reports from the current private placement and written consent from the mother to observe the student at the current private placement, and she never provided that consent. The record shows she did provide oral consent. That was disputed, that she provided oral consent. There was a finding that that was not correct. It disputed facts. Counsel, facts are troublesome things, and I think you're laboring under the misapprehension that we're a trial court. We have to rely upon the record, and these factual bases that Judge Fallman has made reference to in the record, you're stuck with those unless you have clear evidence to the contrary, and if you're stuck with those, you've got a problem because we can't make up the facts to fit cases that you're citing. We have the facts of this case, this settlement agreement, this mother, this child, and I don't know who was running the facts of the case here, but you have to refute those in order for us to do something to be helpful to your client. Counsel, you may respond, but your time has expired. You may respond to Judge Smith if you wish. You may respond to Judge Smith if you wish, but your time for your presentation has expired. Again, this case is more complicated than that because it had issues of whether or not that a settlement agreement can constitute a bilateral placement, whether a school can, on its own, declare unilateral placement, whether the school was acting in good faith when they offered a placement that they had no way to implement the IEP. When the mother went in and looked at the actual placement and she did that in good faith that there was no way that the school could actually implement it. Thank you. Thank you, Counsel. Your time has expired. We'll hear from the State. Thank you. Good morning, Judge Taubman, Judge Scanlon, Judge Smith. My name is Burton Carter. I'm the Deputy Attorney General representing the defendant, Department of Education. Can you hear me? I believe that the court is correct and the difficulty that he's having, Mr. Bassett is having, is following up the facts that will basically refute the findings of the hearing's officer, is that there were no facts. The fact is that she testified for approximately, I believe approximately an hour, and she said that she had, the reason why she couldn't make the IEP meeting in July was that she was, and supposedly being a nudist, and that she was going to be on the mainland at that time. That was in connection with a divorce matter. Yes, I mean she was taking the boy to see the visitor father and it was going to be in July. There was evidence to indicate clearly that she had scheduled the meeting in July 2008, 2007, at the earlier April 2007 IEP meeting. Can I just, can I cut this short a little bit? You heard the questions from the court about the findings made by the ALJ, which the district court, of course, relied upon. Based upon those facts, if they are unaltered, I gather it's the position of the state that the district court should be affirmed, is that correct? Yes. And do you know of any evidence in the record that could reasonably be used to show that there was clear error on the part of the ALJ in making the factual findings that he did? I believe this is one of those cases, unfortunately for the mom, that there was indisputable evidence. We brought out record after record to demonstrate that the child was in Hawaii in July 2008. I mean 2007. There were school records from Norman that show that the child was on certain days in July in the state. So it's very clear that the findings and facts were clearly supported by the evidence. And I gather it's the position of the state, as well, that the case law cited by counsel for KD is inapposite because the facts are different. Yes. Thank you, counsel. Is there anything further you wish to add at this point? Unless you have some questions. No further questions. Thank you very much, counsel. The case just argued will be submitted for decision, and we will now come back to Roe versus the Northern Mariana Islands Retirement Fund. Has Mr. Jorgensen appeared? Oh, he is here. Very well. If counsel can take their appropriate places at counsel's table, we'll give you a chance to settle, and then we will hear first from counsel for the appellant.
judges: O'scannlain, Tallman, Smith